IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
|---|---|---|
| v. | : | |
| WALTER GLASGOW | : | NO. 10-347 |

MEMORANDUM

McLaughlin, J.                                          December 1, 2010

      Walter Glasgow is charged by indictment filed on May 26, 2010, with one count of possession with intent to distribute heroine and five grams or more of cocaine base, three counts of distribution of cocaine base, three counts of possession with intent to distribute cocaine base, one count of use of a communication facility in furtherance of a drug crime, and seven counts of possession with intent to distribute cocaine base in or near a school playground or public housing project.  The charges arise out of six separate arrests of the defendant on six days between June 12, 2008 and February 20, 2010.  The defendant moved to suppress all the evidence seized on each of these dates.  At the time of the hearing on the motion, however, the defendant withdrew his motion with respect to two of the dates at issue: February 3, 2010, and February 9, 2010.  The Court will deny the motion with respect to the other four arrests.

I. <u>Findings of Fact</u>

Police Officer John Hanejko was on bike patrol in uniform on June 12, 2008, at approximately 2:41 a.m. when his tour of duty took him to the area of 428 Christian Street in South Philadelphia. He was there with his partner, Officer Deblin, who was also in uniform. Officer Hanejko observed the defendant and another male standing in front of 428 Christian Street, a well lit, high drug area. When Officer Hanejko was approximately ten feet away from the defendant, he observed Mr. Glasgow holding a clear sandwich bag with red tinted baggies inside consistent with drug packaging. Mr. Glasgow looked in the officers' direction and then put the package in his waist area.

Officer Hanejko dismounted his bike and took hold of the defendant. A small amount of the sandwich bag was sticking out of the defendant's waist area and the officer seized the sandwich bag. He recovered from the defendant's waist area a clear sandwich bag containing twenty-one small baggies, eleven red tinted, ten orange tinted, with an off white chunky substance that appeared to be crack cocaine. Officer Hanejko then placed the defendant under arrest for a narcotics violation.

On September 23, 2009, Officer Modesto Vargas was in a vehicle with Police Officer Thomas Kolenkawciv. At approximately 11:24 a.m., they were in the area of 428 Christian Street in South Philadelphia. Officer Vargas was driving his vehicle at

2

that time and location very slowly because he knew that he was in an area with a lot of problems with narcotics. He observed the defendant leaning against the hood of a car. Another male approached the defendant and handed him some money. The officer could not tell the amount. The defendant then retrieved from one of his pockets a clear plastic bag containing a pink item.

Officer Vargas pulled in to conduct a narcotics investigation. The defendant looked in his direction and then fled. Officer Vargas' partner gave chase after the defendant. Officer Vargas got out of his car and did the same. He observed the defendant place an item in his buttocks area inside his pants. Officer Vargas' partner apprehended the defendant and Officer Vargas conducted a frisk of the defendant for weapons. In his experience, weapons and narcotics go hand in hand. He recovered the narcotics. The defendant struggled. He would not place his hands behind his back and was kicking and yelling and screaming. The defendant spit in the officer's direction. The plastic object he recovered from the defendant's buttocks area was consistent with what he saw. The bag contained little zip lock baggies containing a white chunky substance that appeared to be crack cocaine. The police also recovered an amount of United States currency from the defendant but no weapons.

On December 16, 2009, at approximately 4:18 p.m., Officer John Rasmus was in the area of 400 Christian Street in

South Philadelphia in a bike patrol uniform.  He had received information during roll call from the residents in the area of recent narcotics sales.  Officer Rasmus was coming through a driveway when he observed the defendant exit a vehicle and leave the engine running in violation of Motor Vehicle Code 3701-A.  There were three other males in that area about ten to fifteen feet away from the defendant.  There are signs posted for "no loitering" in that area because of the drug problem.  The defendant looked at him, turned back toward the driver's side of the vehicle and threw a small object onto the driver's seat.  The police were about five feet away from the defendant when he did that.  Officer Rasmus did not know what the object was.  He believed it was narcotics due to the area and his prior experience with the other three men who were there.  He had arrested them before for narcotics sales.  He also had some experience with the defendant.  The defendant was arrested as a co-defendant in another narcotics transaction.

Officer Rasmus approached the defendant in the vehicle.  He notified Officer Rapisi and Officer McGraw about the object he observed sitting on the driver's seat.  Officer McGraw recovered from the driver's seat one clear baggie which contained six large pink tinted packets that contained an off white chunky substance that appeared to be crack cocaine.  There was also a small purple tinted pack with an off white chunky substance that appeared to

4

be crack cocaine.  The defendant was then placed into custody. They also found that the defendant had a suspended driver's license.  He was issued a moving violation and he was arrested for the narcotics.

On February 20, 2010, at approximately 9:40 p.m., Officer Edward T. Kavanagh was working with Officer Morris; they were in plain clothes in an unmarked car.  They observed a white male, later identified as Thomas McGrath, on a cell phone in the 1400 block of Porter Street with U.S. currency in his hand.  He looked at the police vehicle and started to wave at them.  They pulled over and McGrath walked up to the vehicle.  The officers put down the window and asked him what he needed and he responded "you got my stuff."  At that point, the officers knew a narcotics transaction was about to take place.  They told him "no, not us." The police then pulled off and drove around the corner.

While they were driving around the corner, Officer Morris contacted back up officers that were in a marked unit in full uniform.  They informed the officers of what had happened. They went around the corner to the 1400 block of Porter Street and set up surveillance across the street from where McGrath was standing.  He was still there.  McGrath walked into a house directly across the street from the police.  Approximately three minutes later, McGrath existed the house and a green Honda Accord pulled up to that location and double parked in front where

McGrath was standing.  The vehicle was driven by Walter Glasgow.
McGrath walked over to the passenger side of the vehicle with the
U.S. currency in his hand.  McGrath and the defendant engaged in
a brief conversation that the police did not hear.  McGrath then
handed the U.S. currency to the defendant.  The defendant
appeared to reach under himself and pull out two small objects
and handed them to the white male.  The white male walked off and
drove east bound on Porter Street.  They were about fifteen feet
away when they saw the transaction.  The defendant drove off east
bound on Porter Street.

The officers followed the vehicle and informed the back
up officers of what had occurred.  They were in constant radio
contact.  The back up officers informed Officer Kavanagh that
they had McGrath stopped and they recovered from him one small
blue and one small green zip lock baggie with what they thought
was crack cocaine inside.  Officers Kavanagh and Morris then
pulled over the defendant's vehicle.  They took Mr. Glasgow out
of the vehicle and into custody for narcotics violation.  While
they were taking him out of the vehicle, the officer saw a clear
plastic baggie on the seat of the car that contained four small
green, three small blue, two small orange, one small clear, and a
total of forty-three small pink zip lock baggies which all
appeared to contain crack cocaine.  The defendant was not out of

6

their sight after he left McGrath.  Fifteen or thirty seconds expired during this period.

Officer Floyd Shade was called to the scene of the 1400 block of Porter Street by Officer Kavanagh for a possible drug transaction.  His responsibility was to stop a white male who was later identified as Thomas McGrath.  He did that with his partner.  They found in McGrath's front white jacket pocket one blue and one green zip lock type baggie that appeared to contain crack cocaine.  They placed the man under arrest.  He notified Officer Kavanagh via police radio as to what he recovered and where he recovered it.

II.  Discussion

The Court will discuss each arrest in turn.  The police had at least reasonable suspicion to stop the defendant and seize the bag on June 12, 2008, when they observed the defendant, in a high drug area, put a clear sandwich bag with red tinted baggies in his waist area after he looked toward the uniformed officers.

Similarly, on September 23, 2009, the police thought that they observed a narcotics transaction when they saw an exchange of currency for a clear plastic baggie containing a pink item.  Upon looking toward the police, the defendant fled and put an object in his pants.  The police lawfully frisked the

defendant and recovered the bag in the defendant's pants during the frisk.

On December 16, 2009, the police saw the defendant put an object on the driver's seat of the vehicle.  When they approached the car, the police saw that the object was a clear baggie which contained six large pink tinted packets that contained an off white chunky substance that appeared to be crack cocaine.  They then had probable cause to seize the bag and arrest the defendant.

On February 20, 2010, the police saw a drug transaction go down and found the drugs on the buyer before stopping and arresting the defendant.  As they were taking the defendant out of the car, they found additional drugs that were proper to seize.

An appropriate Order will issue separately.